Good morning, everyone. I understand that all counsel are present in all of the matters on today's argument calendar and that we'll also take Jarevo v. Yolanda Reyes, 18-1433 on submission and we'll reserve decision as to that. We'll start today's argument calendar with United States v. Parkins, 18-1019. Mr. Habib. Thank you. Good morning, Your Honor, and may it please the Court. Daniel Habib, Federal Defenders of New York on behalf of Nikos Parkins. The special condition of supervised release requiring Mr. Parkins to perform 695 hours of community service violates each of the three statutory requirements set forth in 18 U.S.C. section 3583D. First, the condition violates 3583D.3 because it's inconsistent with the applicable guidelines policy statement, which generally prohibits the imposition of community service in excess of 400 hours. Is that per year? The application note doesn't specify. It says 400 hours, period. And no case that the party's research has uncovered has suggested that the cap is anything other than a total cap. Second. Although that can't be in part because there are cases certainly in the Second Circuit that grapple with the idea or with the imposition of something in excess of 400 hours. Is that right? So this is just a community service condition that conceivably could have resulted in an excess of 400 hours of service. But to be precise, the condition applied only when the defendant in Ctul was not working or not enrolled in a vocational program. That is to say there was no certainty that the condition would exceed 400 hours, as there is here. Moreover, the probation department in Ctul recommended the condition imposed. In contrast to probation's imposition here, which supported the defense's request for 120 hours. But the probation services does not oppose the imposition here. In this case, Your Honor, at resentencing, Mr. Parkins requested 120 hours of community service, period, and the probation department supported that recommendation. Second, the community service condition violates 3583D2 because it involves a greater deprivation of liberty than reasonably necessary to deter, incapacitate, and rehabilitate. We know this is true, and we have the best possible evidence that this is true from Mr. Parkins' first 13 months of supervision, during which time he performed only 120 hours of service, but conformed his conduct to the law in all respects. He's working? He's working full time as a Lyft driver, Your Honor. To date, Mr. Parkins has completed approximately 420 hours of community service. This court can find that in the December 20, 2018, transcript at page 2, indicating 191 hours of service during calendar year 2018. In addition, a status conference was held last week on June 18, at which probation reported that Mr. Parkins had performed 109 hours in calendar year 2019. That proceeding has yet to be transcribed. It would appear that the suggested limitation of 300 hours is mainly based upon some perceived shortage of good works available in the community. I think the application note says longer obligations impose administrative burdens related to the selection of sites and monitoring of attendance. That's right. And let me say, Your Honor, that below the probation department did advise the district court that it was, quote, short on good spots for federal supervisees. That is to say, the 695 hours consumed by Mr. Parkins at St. John's Bread and Life is time that probation is not able to allocate to other supervisees with community service obligations. And so in that sense, the condition is burdensome. More fundamentally, under, I'm sorry. No, good. No, Your Honor. I'm here for you. Whenever a lawyer starts with more fundamentally, I let that lawyer go. Go ahead. Nothing could be more fundamental than the court's question. So here's my issue, or the problem that I've got. If Judge Berman here had imposed, under all of the factual circumstances, a sentence of incarceration of three or four years, you might be arguing that that was improper under 3553, but we would be very hard put to reverse that sentence. And here, it's, I mean, I think what he was trying to do was, or he viewed himself as helping your client. So I would say, to fight the premise, Your Honor, I think if Judge Berman imposed a term of incarceration here, we would indeed be contesting the substantive reasonableness of the sentence. I recall that Mr. Parkins' guideline range was four to ten months in zone B. He was a first-time offender who engaged in low-level roles in two frauds, but more into both of those frauds. Indeed, both of the people he cooperated against received non-incarceratory sentences. But to take Your Honor's question... Judge Berman is known as someone, as a judge, who will impose terms of imprisonment for significant cooperators. And if you were here, you would, as you put it, contest that, but we would be hard-pressed to reverse that decision, in part because of the significant deference we give to district court sentencing decisions. Fair point, Your Honor. But let me say this. The statutory framework here circumscribes the district court's discretion in ways not necessarily applicable to a term of imprisonment. Section 3583D sets forth three statutory requirements. One is consistency with the applicable policy statement. And the Supreme Court in Dillon held that analogous language was binding, notwithstanding the advisory nature of the guidelines. In addition, as we've pointed out, I think the district court committed both legal and factual errors in selecting this term of community service, which would extricate us from abuse of discretion review. As alluded to earlier, the first was the court's failure to recognize that Mr. Parkins had proved with historical evidence that a lesser term of community service was sufficient to deter and incapacitate him. Normally, that's a predictive exercise for the district court. What sentence will be sufficient going forward? Here, no exercise in prediction was necessary. We had the best possible evidence that a much lesser service obligation would have sufficed. In addition, with respect to legal error on the—well, let me say this. Our best, I think, other factual error is the district court's failure to grapple with the economic impact of the service condition on Mr. Parkins. As documented without dispute from any party, Mr. Parkins was earning wages below the poverty level as an hourly worker. Every hour spent in service is an hour spent not working. And the district court simply said it's not the fault of community service that he can't earn a good living. Is there any evidence of an administrative burden on probation? I think the best evidence, Your Honor, is the probation department's representation to the court that it was short on service sites, and so this condition would consume hours that might ordinarily go to others. I want to say also that while the district court referred to the fact that St. John's Bread and Life monitors Mr. Parkins' hours, it didn't address the other burdens that the condition triggered, namely selecting alternative sites, monitoring hours at those sites, assisting Mr. Parkins in constructing a schedule that balances his community service obligations with other supervised release conditions, such as the need to work full-time and make restitution, and making periodic reports to the court. All of those consume the probation department's time as well. Thank you very much. Thank you. Since he's a Lyft driver, it looks as though the judge was relying on that in saying that it looked like his work schedule appears flexible. His work schedule is flexible, Your Honor. There is no finding here that this community service is impinging on the number of hours that he would work. I mean, you can always work more hours. That's true, but it's also the case that Mr. Parkins has several other obligations in his life. Most prominently, he's a single parent to an 11-year-old child, and that consumes a number of hours spent at community service. And by the way, it's not simply the hours spent in the food pantry, which is where he works, but the record reflects that it's an hour-round trip each way from Mr. Parkins' home to the service site. So that's an hour of transit and an hour of service time that he can't spend driving, and an hour he allocates to that is an hour he doesn't spend parenting. And so, sure, there are hours in the day. Thank you. Thank you, Your Honor. And if for rebuttal, we'll hear from the government. Good morning. May it please the Court, my name is David Abramowitz. I represent the United States on this appeal, and I also represented the United States below. The district court had broad discretion to set conditions of supervision, and it did not abuse that discretion. The record of resentencing makes clear that Judge Berman followed all the requisite procedural steps. He understood, and he weighed the— When is enough enough? You know, I know that you've got to stand there and defend the district court's decision in this case, and I appreciate that, but I also saw that the—it seemed that the government, when the decision was being made, was not eager to support the decision at the time. So when is enough enough? When is enough community service too much? Your Honor, there's no absolute number, except perhaps— Well, that worries me. —the number of hours in a day or the number of hours needed for someone to sleep. But in this case, 300 hours a year is not too much. The judge specifically found that that was the exact— But I'm asking you a slightly different question. What would be too much, and how would we assess what's too much? I think if it were impossible to comply with or it were too great a restriction on a defendant's liberty, that would, of course, be too much. But in this case, the judge specifically considered whether this was too much. He found that it was less than an hour a day. He found that the defendant's work schedule as a driver permitted him to complete this community service requirement, and in fact, the probation— The guidelines note gives us a presumptive 400-hour limit. So if that's the case, would it allow more than that time? I think Judge Berman set forth a number of reasons that it was appropriate in this case to impose more than 400 hours of community service. A major motivating factor seemed to be that this was a defendant who had found himself—who had gotten himself into trouble on multiple occasions over a period of many years and that in both of the types of criminal conduct he engaged in, he was sort of out and about in the community, resisted invitations to join criminal conduct and then succumbed to that temptation. And so there seemed to be, from Judge Berman's written decision and his statements at resentencing, an interest in occupying the defendant in a productive manner. Is that an exceptional circumstance? Judge Berman certainly found that it was a circumstance that justified more than 400 hours total in this particular case. The 400 hours limit, I mean, by complex terms, is not an absolute limit. It says generally courts should not impose more than 400 hours. And as the next sentence makes clear, that's really a benchmark geared toward ensuring the probation department has sufficient resources. And that's another thing that Judge Berman considered at resentencing. He spoke with the probation department. He got an assurance from the probation department that there were programs available, both weekday and weekend programs, including programs beyond just working at a food pantry, but providing other types of work that would offer the defendant skills and help both the defendant and the community. What is the evidence before us that Mr. Parkins gained any educational or vocational skills from his community service? I'm not sure that there is any evidence on this record. At a certain point, it is up to the defendant. The district court seems to be providing the defendant an opportunity through the community service. But again, at a certain point, it is up to the defendant to take advantage of that opportunity. It could very well be that he will When you have an education, do you get at a food pantry? Well, the probation department specifically noted at resentencing that this was not just a food pantry, but I think there were other services offered, tax preparation services, other services that the program provided to the community, and the defendant would have options to pursue those opportunities. Whether he in fact has, I'm not sure on this record. This 400 hours that is referenced in the guidelines policy statement, is that per year or is that in total? The policy statement does not make clear either way, although the second sentence of the commentary suggests that it would be per year. It would not make sense for a comment to be concerned about the administrative burdens on the probation department when 400 hours for one year is completely different for 400 hours over, say, five years. That's a completely different level of burden on the probation department. But it does not specify either way. So can you explain to me what rationale for community service applies to Mr. Parkins that doesn't apply to every criminal defendant? Yes, Your Honor. There were particularized findings about this defendant's seeming pattern of falling into criminal conduct. Again, it was over many years. He made poor decisions. Even though he was a very low member of both of the criminal conspiracies he joined, with a very minor role, he made foolish decisions. And so Judge Berman found that community service would, among other things, teach him responsibility, would occupy him productively. Clearly, in terms of protecting the community, by keeping him occupied that way, that could prevent him from falling into criminal conduct yet again. What you're describing is anyone who fits into criminal history category two or higher. I suppose, Your Honor, I suppose it depends on the type of criminal conduct that the person has fallen into. I think it's relevant here that this was not necessarily a defendant who conceived of the crimes and went out and planned to commit them, so much as someone who succumbed to peer pressure multiple times. And so surrounding him with positive influences may be more of an interest in this case than it would be in a typical case. Is that what the judge said? He specifically noted the personal history and that the criminal conduct spanned many years. Was he a teenager at the time? No, Your Honor. He was in his, I believe he was in his twenties with respect to the first offense he committed, and I believe in his thirties. I may have that a little off, but he's in his, I think, late thirties at this point. Is the government aware of a higher term of community service than this one? I am not, Your Honor, other than the cases cited in our briefs. But as my colleague noted, those were cases where the community service was potential as opposed to definite. So the government is not aware of any. Okay. So this is the outer limit based on what's actually been imposed. This is a high degree of community service. There's no question about that. Unless the panel has additional questions, we'll rest on our submission. Mr. Habib. Thank you, Your Honor. Three brief points. Judge Park, the district court made no finding that this was an exceptionally aggravated case. To the contrary, this case is exceptional on the low end. Mr. Parkins was a first-time offender who engaged for brief periods of time six and ten years ago in low-level roles in conspiracies that he then broke up via cooperation. If anything, a lesser term is indicated on those facts. Judge Loyer. That would be the case if this was imposed for purposes of punishment. Yes, that's . . . Your Honor is right. The district court could not have imposed this condition for purposes of punishment. But when the application note creates the presumption that it does, I think it's a fair inference, as Judge Park points out, that it demands something unusual, something extraordinary, something exceptional. And what I'm suggesting to the Court is that what's exceptional about Mr. Parkins is that he's among the least culpable defendants who could come before a court for sentencing in light of his low guidelines. In this, where the presumption is 400 hours and he's now completed more than 400 hours, the fact that his situation is exceptionally less aggravated than average, I think dictates just a straightforward application of the presumption pursuant to 3583D3. If I may, two more brief points. Judge Loyer, I think you heard a concession from the government here that there's no evidence in the record that any educational or vocational benefits are being realized by virtue of participation in the food pantry. And let me be clear about this. Mr. Parkins works exclusively in the food pantry. The service site may provide additional services, but Mr. Parkins' educational achievements topped out at high school. So he's not providing tax services and he's not providing legal services to the patrons of the service site. And finally, Judge Jacobs, with respect to the question whether the cap is annual or total, I think there's to the — I'll say the following. The application note itself doesn't say, but to the extent that there's ambiguity, that makes this a lenity case. And this Court has held that the rule of lenity applies to the guidelines. And so if there's genuine doubt as to whether the cap is annual or total and the parties have unearthed no case suggesting that it's annual rather than total, that ambiguity would be resolved. The rule of lenity would apply, however, to a penalty, which this really is not. Well, I think the rule of lenity applies. Well, certainly the community service condition has punitive consequences, whether it was imposed for those purposes or not, in that it works a deprivation of liberty in the same way the term of incarceration does. Thank you, Your Honors. Thank you very much. Rule of reserve decision.